897 So.2d 560 (2005)
Donald J. WINFORD
v.
CONERLY CORPORATION.
No. 2004-C-1278.
Supreme Court of Louisiana.
March 11, 2005.
*561 Favret, Demarest, Russo & Lutkewitte, Joseph Paul Demarest, Seth Holden Schaumburg, New Orleans, Counsel for Applicant.
The Law Office of Sheryl Story, Sheryl D. Story, New Orleans, Counsel for Respondent.
JOHNSON, J.
This matter is before the Court on the issue of whether plaintiff's claim for worker's *562 compensation benefits has prescribed, where the plaintiff's developmental injury first presented itself within the two-year delay period prescribed by LSA-R.S. 23:1209(A), but did not actually disable plaintiff until after the delay period had elapsed. The Office of Worker's Compensation held that plaintiff's claim was prescribed, and the court of appeal affirmed. For the reasons that follow, we hold that plaintiff's claim for temporary total disability (TTD) benefits relates back to his original timely filed claim for medical and supplemental earnings benefits (SEB) pursuant to La.Code Civ. Pro. art. 1153. For this reason, we reverse the decisions of the lower courts and remand this matter to the Office of Worker's Compensation for further proceedings.

FACTS AND PROCEDURAL HISTORY
On November 17, 1999, Donald J. Winford (hereinafter "Winford") was discarding wooden pallets into a dumpster at the Ritz Carlton Hotel when he lost his balance and fell onto the pavement approximately seven feet below. At the time of the accident, plaintiff was fifty-six years of age and had no history of back pain. At trial both parties stipulated that Winford was within the course and scope of his employment with Conerly Corporation ("Conerly") at the time he was injured. Winford was taken from the construction site to the emergency room at Pendleton Memorial Methodist Hospital complaining of pain to his right hip and lower back. Winford testified at the Workers' Compensation hearing that after his release from the hospital he recuperated for one or two days and then returned to work for Conerly until the renovation project ended, October 13, 2000.
Thereafter, on December 17, 2000, Winford became employed by Milton J. Womack, Inc, another construction contractor. Winford worked for Womack until February 24, 2002, at which time he was carried off the work site complaining of excruciating pain in his lower back and hip. Winford testified that he has not been able to return to work since the incident.
Plaintiff had previously filed a formal claim with the OWC for medical and disability benefits on July 5, 2001. In his complaint, Winford alleged his "hip pain becoming so severe that I can't do regular work." He further asserted that Conerly refused to pay medical benefits to Dr. Robert Segura, one of his treating physicians. Conerly responded to the claim on December 11, 2001 arguing that no benefits were due.
In the interim, plaintiff received treatment from several different physicians, but primarily from Dr. James Baker and Dr. Segura. Dr. Segura first saw Winford on November 18, 1999, the day after the accident. Initially, plaintiff suffered from swelling and mild to moderate edema. Over the next several months, plaintiff continued to have pain and soreness in his hip, although he had no symptoms of necrosis or muscle tears. On January 25, 2000 plaintiff underwent a bone scan to determine whether he had suffered from a hidden fracture which would have accounted for his continued discomfort. Dr. Segura discovered severe disc space narrowing, sclerosis, and spurring consistent with degenerative disc disease. Plaintiff was last treated by Dr. Segura on October 15, 2001. Plaintiff began seeing Dr. Baker on October 16, 2001. On October 18, 2001, Dr. Baker recommended that plaintiff return to work, however he was restricted to medium physical demand activities, which permitted lifting a maximum of fifty pounds with frequent lifting and or carrying of objects weighing up to twenty-five pounds. On October 30, 2001, Winford submitted *563 to a functional capacity evaluation ("FCE"), which found that he should be limited to a light to medium physical demand level. The evaluation found no evidence of malingering. On March 15, 2002, Dr. Baker again found that Winford could return to work, however he was restricted to light physical demand activities, which permitted lifting a maximum of twenty pounds with frequent lifting or carrying of objects weighing no more than ten pounds. Dr. Baker also diagnosed plaintiff as having disk degeneration in the lumbar spine with mild disk space narrowing. Dr. Baker opined that Winford's fall either led to the onset of disk degeneration or exacerbated the development of facet arthritis. Dr. Baker ultimately found that given his long-standing pain, Winford's prognosis for improvement is poor.
A hearing was held on the matter on December 19, 2002, before the Honorable Gwendolyn F. Thompson. On that date the parties stipulated that the Form 1008 petition Winford filed on July 5, 2001 was formally amended to plead for indemnity benefits as of February 25, 2002. The parties further stipulated that Conerly's answer was amended to include an exception of prescription as to indemnity benefits.
Thereafter, Judge Thompson issued a final judgment on February 12, 2003 in favor of Conerly, stating that Winford's claim for indemnity benefits was prescribed under La. R.S. 23:1209. Plaintiff subsequently filed a Motion for New Trial on February 19, 2003 requesting that the OWC reconsider its decision. On June 27, 2003, the OWC affirmed its decision, holding that Winford's claim for indemnity benefits had prescribed. Winford then appealed the decision of the OWC to the Fourth Circuit Court of Appeal. By judgment dated March 31, 2004, the OWC decision was affirmed.[1] Subsequently, Winford filed an application for writ of certiorari to this Court. We granted the writ application to determine the correctness of the lower courts' rulings.[2]

DISCUSSION
The Workers' Compensation Act provides that an employee who suffers a workplace injury is entitled to medical benefits, supplemental earnings benefits (SEB) when he or she becomes unable to earn 90 percent of his pre-injury wages, and/or temporary total benefits when he or she is unable to engage in any self-employment or occupation for wages. La.Rev.Stat. 23:1203; La.Rev.Stat. 23:1221(1)(a); La.Rev.Stat. 23:1221(3)(a). La.Rev.Stat. 23:1209 provides that an injury not resulting at the time of, or developing immediately after, the accident is a developing injury.[3]

*564 I.
The Workers' Compensation Act is to be liberally construed in favor of protecting workers from the economic burden of work-related injuries. Sevin v. Schwegmann Giant Supermarkets, Inc., 94-1859 (La.4/10/95) 652 So.2d 1323, 1325 (citing Lester v. Southern Casualty Ins. Co., 466 So.2d 25 (La.1985)). In furthering this policy, this Court has construed La.Rev.Stat. 23:1209(A)'s term "the time the injury develops" liberally in cases in which the worker attempts to continue working until no longer able to perform his employment duties. Sevin, 652 So.2d at 1325-26 (citing Wex A. Malone & H. Alston Johnson III, 14 Louisiana Civil Law Treatise-Workers' Compensation § 384 (3d ed.1994)).
This Court has consistently held that an employee who suffers a work related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the disability, rather than from the first appearance of symptoms or from the first date of treatment. Id. at 1326. The "time the injury develops," is generally understood as the date the disability develops, which is usually identified as the time when it becomes clear that the worker can no longer perform his or her employment duties in a satisfactory manner. Id. at 1325-26 (citing Swearingen v. Air Prod. & Chem., Inc., 481 So.2d 122, 124; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, 525). The Sevin Court found that the "developing injury" rule is applicable where the employee, after an accident in which injury is immediately apparent, continues to attempt employment duties until he or she is finally disabled from doing so. Id.
The jurisprudence has generally identified two situations that signify the date a developing injury was found to be disabling for the purpose of prescription. The first is the date of termination of employment. Scott v. Wal-mart Stores, Inc., 03-0104 (La.App. 4 Cir. 7/2/03) 851 So.2d 1210, 1214; (see Boudreaux v. Angelo Iafrate Const., 02-0992 (La.App. 1 Cir.2003) 848 So.2d 3, 7). The second is the date of medical diagnosis where the diagnosis notifies a previously unaware injured employee of a disabling condition. Scott, 851 So.2d at 1214 (see Holcomb v. Bossier City Police Dept., (La.App. 2 Cir. 8/25/95) 660 So.2d 199); see also Collier v. Southern Builders, Inc., (La.App. 2 Cir.1992) 606 So.2d 885. Alternatively, the date of diagnosis is helpful in determining the date an employee became disabled where the record does not indicate the date when the employee became unable to work. Holcomb, 660 So.2d 199, 202.
Plaintiff contends that this Court should extend the developing injury jurisprudence to create a third situation where a developing injury is found to be disabling. Plaintiff contends that July 5, 2001, the date he filed for disability benefits asserting that his pain was "becoming so severe that I can't do regular work" was the date that his developing injury essentially "developed" into a disability, as it was then clear to him that he could no longer perform his duties in a satisfactory manner. Plaintiff asserts that the creation of a third "trigger" which indicates that an injury has become a disability is consistent with a liberal interpretation of the Workers' Compensation Act, and with Sevin, which stated that an injured employee "should *565 not be penalized for attempting to remain in the work force in order to support his or her family or in the hope that the condition will improve." Sevin, 652 So.2d at 1326.
Although this Court acknowledges the necessity of a liberal interpretation of Section 1209, we decline to interpret the Act in this manner. Although Sevin articulated the Act's intent to avoid penalizing employees with developing injuries by forcing them to assert a cause of action within one year of the initial injury, the Sevin Court also acknowledged that the date of disability has been interpreted as the date the worker is "no longer able to perform his or her employment duties." Id. As applied to the case at bar, although Winford claimed that his pain was disabling on July 5, 2001, he continued to perform construction work for more than seven months, until February 24, 2002, when pain forced him to leave the construction site. Not even the most liberal interpretation of the Act would allow employees to effectively declare the date that they believe they are disabled, without objective indicators to assist the courts in determining the date of disability for the purpose to calculating benefits. Thus, according to Sevin and its progeny, as well as a plain reading of Section 1209, plaintiff's developing injury did not disable him until the date that he was no longer able to work, which occurred after the prescriptive period expired. Therefore, we continue to find that a developing injury does not manifest into a disability until the employee is either forced to discontinue working due to the injury or the employee receives a medical diagnosis which determines that he or she is disabled.

II.
Plaintiff contends that although his injury did not become disabling until after the expiration of Section 1209's two year prescriptive period, his claim for TTD benefits has not prescribed because his amended petition "relates back" to his original petition for SEB and medical benefits, which was timely filed. Conerly asserts a strict interpretation of Section 1209 barring all claims for indemnity based upon developmental disability where the claim has not been filed within two years of the accident and no indemnity was ever paid. We find that Conerly's strict interpretation of Section 1209 would essentially render the delay period peremptive, rather than prescriptive, and further; that the stipulation providing for the formal amendment of plaintiff's petition to claim TTD benefits relates back to plaintiff's timely filed Form 1008 for medical and SEB benefits. Therefore, we hold that plaintiff's claim has not prescribed.
Louisiana courts have determined that the time period established for filing workers' compensation claims is prescriptive, rather than peremptive. 14 Malone & Johnson § 384, p. 318. A party must specifically plead the exception of prescription, it may not be supplied by the court. La.Code. Civ. Pro. art. 927(B). Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Campo v. Correa, 01-2707 (La.6/21/02) 828 So.2d 502, 508. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Jonise v. Bologna Bros., 01-3230, p. 6 (La.6/21/02), 820 So.2d 460, 464.
In the instant matter, plaintiff contends that the parties' stipulation providing for an amendment to claim indemnity benefits relates back to his original petition and thereby interrupts prescription. On the date of trial the parties entered into a stipulation which permitted Winford to amend his July 5, 2001 petition for medical and SEB benefits to seek TTD *566 benefits as well. This stipulation also provided that Conerly's answer was formally amended to plead the exception of prescription. A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Becht v. Morgan Bldg. & Spas, Inc., 02-2047 (La.4/23/03) 843 So.2d 1109, 1112 (citing R.J. D'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983)); see Stelly v. Guy Scroggins, Inc., 682 So.2d 782 (La.App. 3 Cir.1996), writ denied, 688 So.2d 503 (La.1997). Stipulations between the parties in a specific case are binding on the trial court when not in derogation of the law. Becht, 843 So.2d at 1112. Such agreements are the law of the case. Id.
La.Code Civ. P. Art. 1153 governs the relation back of amendments and provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the filing of the original pleading.
A concomitant provision is La.Code Civ. P. Art. 934, which provides the procedural mechanism by which petitions may be amended to remove the grounds upon which a peremptory exception of prescription might have been sustained:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
In Giroir v. South Louisiana Medical Ctr., this Court explained the manner in which Article 1153 and prescription statutes interact. Giroir v. South Louisiana Medical Ctr., 475 So.2d 1040 (La.1985). We held:
The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period.
Giroir, 475 So.2d 1040, 1045. See Findley v. City of Baton Rouge, 570 So.2d 1168, 1170 (La.1990) ("A fundamental purpose of prescriptive statutes is to protect a defendant from stale claims and from the loss or non-preservation of relevant proof."); See also Ray v. Alexandria Mall, through St. Paul Property & Liability Ins., 434 So.2d 1083, 1086 (La.1983) ("As eloquently stated by the late Henry McMahon, one of the chief redactors of the new Louisiana Code of Civil Procedure, `The new code embodies procedural rules designed to permit the trial of a case to serve as [the] search for the truth, and to have [the] decision based on the substantive law applicable, rather than upon technical rules of procedure.' Amendment of pleadings plays a central role in assuring that the pleadings are not an end in themselves, but only the means of properly presenting the case for full judicial resolution on the merits.").
Recently, in Reese v. State Dept. of Public Safety and Corrections, this Court held that a plaintiff's amended petition to filiate himself to his deceased father related back to his original wrongful death petition. Reese v. State Dept. Of Public Safety and Corrections, 03-1615 (La.2/20/04) 866 So.2d 244, 250. In finding article 1153 applicable, this Court held:

*567 Pursuant to this article, so long as a comparison of the amended petition to the original petition shows that the original petition gave fair notice of the factual situation out of which the amended petition arises, the amended petition will relate back to the date of the filing of the original petition and prescription with regard to the amendment is interrupted as of the filing date of the original petition. [citations omitted]. Where there is some factual connexity between the original and amended assertions, together with some identity of interest between the original and supplemental party, amendment should be allowed and excepted from the interests intended to be protected by the prescriptive statutes. Baker v. Payne & Keller of Louisiana, Inc., 390 So.2d 1272, 1275 (La.1980).
Thus, the focus is on what the plaintiff has included in his original petition, not what was omitted. Further, during this inquiry, the court should keep in mind the general rule that pleadings should be construed in such a manner as to achieve substantial justice. La. C.C.P. art. 865; (citations omitted). Harsh, technical rules of pleadings are not favored in Louisiana in order to arrive at the truth and avoid miscarriages of justice. La. C.C.P. art. 854; (citations omitted).

Reese, 866 So.2d at 248-249.
Reese makes clear that an amended claim relates back to the original claim where there is a factual connexity between the original and amended assertions. Reese, 866 So.2d at 248. Therefore, the question before this Court is whether the allegations set forth in Winford's Form 1008 notified Conerly that a developing injury was at issue in this case.
Under the facts present sub judice, plaintiff's petition alleged that Conerly refused to authorize medical treatment, and disability status. Winford described the accident and injury as "While loading wooden crates into dumpster, standing on edge of top of dumpster, lost balance, fell 6 feet to concrete, on right side." After checking the box for "Disability status", plaintiff then wrote "hip pain now becoming so severe, I can't do regular work." Further, under "Other", plaintiff alleged that Conerly "has refused to pay Dr. Segura  I'm in need of additional treatment because of right hip/backside pain." Clearly, the allegations present in plaintiff's petition sufficiently notified Conerly of the factual situation giving rise to his subsequent claim for a developmental disability. Winford's petition for SEB makes clear that he believed that his injury was preventing him from earning wages commensurate with that which he earned before the accident. Thus, plaintiff has satisfied the requirements of Reese, as there is a clear factual connexity between the facts alleged in his Form 1008 and the claim asserted in his amended petition.
Further, Winford's claim for TTD benefits is closely analogous to Baker v. Conagra Broiler Co., where the plaintiff was permitted to amend his petition to claim benefits for a developing injury. Baker v. Conagra Broiler Co., 93-1230 (La.App. 3 Cir. 5/4/94), 640 So.2d 494, writ denied, 642 So.2d 1289 (La.9/23/94). Under the facts present in Baker, an employee's left eye was injured after he was attacked by a co-worker. Baker, 640 So.2d 494, 495. During treatment for his injury, Baker received disability benefits; however, he timely filed a Form 1008 claiming that his employer's workers' compensation insurer failed to pay some of the medical bills associated with the injury to his eye. Baker, 640 So.2d at 495-96. As a result of a preexisting diabetic condition, the blow to Baker's face led to complications that resulted *568 in blindness and the removal of the eye more than two years after the accident. Id. at 496. Baker then filed an amended petition requesting compensation benefits for the loss of his eye. Id. Conagra asserted that Baker's claim was prescribed, as his developing injury did not become a disability until after the two year delay period had elapsed. Id. However, the court of appeal correctly held that Baker's amended petition for benefits related back to the original timely filed Form 1008. Id. at 496-97.
The Third Circuit properly articulated the ameliorative goal of Article 1153 when it stated:
It is well established that article 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the original fact situation out of which the amended claim arises. Baker, 640 So.2d at 497 [citations omitted]. Amendments have been allowed to relate back under article 1153 to add new plaintiffs, add new defendants, state a different cause of action, and change the relief prayed for [citations omitted].
Prescriptive statutes are to be construed in favor of maintaining rather than barring actions. [citations omitted]. Consistent with that precept, La.Code Civ. P. Art. 1153 should be applied liberally and without undue restriction by technical rules. [citations omitted]. This is especially true in workers' compensation cases.
If the original timely pleading gives actual notice to a party that a formal claim is being made based on a particular factual situation, no essential purpose of a prescriptive statute is violated by permitting relation back of a post-prescriptive amendment based on the same factual situation. Through the original pleading, the opponent knows that judicial relief is sought from the general factual situation alleged and it is put on notice that its evidence concerning that factual situation should be collected and preserved. [citations omitted].
Baker, 640 So.2d at 497.
In Baker, the plaintiff initially asserted a claim for medical benefits and thereafter filed an amended claim for scheduled loss payments. The Third Circuit recognized that the claims asserted disparate statutory duties and causes of action, however, the court found that the amendment related back because a "bare bones factual connexity" existed between them. Id. at 498. Further, the court of appeal found dispositive the fact that Conagra "knew of Baker's existence" and
was not prejudiced in preparing and conducting its defense since the 1008 form and the claims data form put Conagra on notice of a possible loss of eyesight claim.
Id.
Here, Winford's original petition was timely filed and asserted a valid prima facie claim for SEB benefits. Further, as was the case in Baker, the parties on Winford's Form 1008 are the same as those named in his stipulation amending his original petition. In addition, as we have previously noted, the allegations set forth in plaintiff's original petition afforded Conerly actual notice that judicial relief was being sought arising from the injuries Winford sustained during his fall. Conerly was aware of Winford's existence, as they were paying his medical bills and receiving copies of his work status reports. Thus, Conerly was aware that Winford's condition was deteriorating. Further, a thorough review of the record makes clear that Conerly was not prejudiced in preparing and conducting its defense since the 1008 form and the stipulation amending plaintiffs claim put Conerly on notice that *569 the disabling condition of Winford's hip and lower back were at issue. The record reflects that Winford was thoroughly questioned by Ms. Story at his deposition on November 19, 2002 and at the hearing on December 19, 2002 regarding his hip and back pain and the manner in which it limited his employment capabilities.
Therefore, pursuant to the liberal interpretation of Article 1153 articulated by existing jurisprudence, Winford's claim for TTD benefits has not prescribed, as his original petition gave Conerly fair notice of the factual situation out of which the amended petition arose. Further, despite defendants' contentions to the contrary, Baker is analogous to the instant case, because even though Winford's claim for medical benefits was ultimately adjudged to be not at issue, evidence presented at the hearing prove that Winford satisfied his prima facie burden for an SEB claim. Therefore, we find that Winford's claim for TTD relates back to his timely filed original petition for SEB benefits.

III.
Defendants contend that even if this Court finds that plaintiff's amended petition relates back to his original petition, his claim for TTD is nevertheless invalid because the original petition failed to state a cause of action for which relief could be granted. Conerly asserts that Winford did not have a justiciable claim, as his medical bills were always paid timely. Further, Conerly asserts that Winford's SEB claim was similarly without merit, as evidenced by the hearing officer's finding that plaintiff was not entitled to SEB benefits. We disagree and find that plaintiff asserted a valid prima facie case for SEB, even though the OWC ultimately found it to be without merit. Therefore, since plaintiff asserted justiciable claims in his original petition, his amended petition asserting a claim for TTD benefits relates back to his original petition and has not prescribed.
Conerly cites Duplechain v. Dept. of Transp. & Dev., where the Third Circuit held that a workers' compensation claimant could not file his petition less than one year after indemnity payments ceased in order to interrupt prescription. Duplechain v. Dept. of Transp. & Dev., 02-356 (La.App. 3 Cir. 10/02/02) 827 So.2d 567, 568. The appellate court found that "no dispute existed at the time" Duplechain filed suit, and furthermore, that "a claimant cannot file suit merely to preserve a potential claim when no dispute exists." Id. at 568; see Desselle v. Dresser Industrial Valve, 96-374 (La.App. 3 Cir. 2/5/97) 689 So.2d 549. Further, Conerly correctly points out that the voluntary payment of medical benefits does not interrupt prescription for indemnity claims. Brown v. Travelers, 247 La. 7, 169 So.2d 540 (1964).
It is well settled that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97) 696 So.2d 551, 556. (citations omitted). In applying the manifest error-clearly wrong standard, the appellate court must determine whether the factfinder's conclusion was reasonable, not whether the trier of fact was right or wrong. Banks, 696 So.2d at 556 (citing Stobart v. State, 617 So.2d 880, 882 (La.1993)). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id. (citations omitted). Thus, even where the appellate court is convinced it would have weighed the evidence differently if it had been sitting as trier, the court of appeal may not reverse if the factfinder's findings are reasonable *570 in light of the record reviewed in its entirety. Id.
An employee is entitled to receive SEB benefits if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. La Rev. Stat. § 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn ninety percent of his pre-injury wages under the facts and circumstances of the individual case. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94) 630 So.2d 733, 739. This analysis is necessarily one of facts and circumstances in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). The provisions of the Workers' Compensation Act with regard to benefits are to be liberally construed. Williams v. Rush Masonry, Inc., 98-2271(La.6/29/99) 737 So.2d 41, 46.
While we agree that a claimant may not file a petition to preserve a potential claim where no dispute exists, in the instant case, Winford had a prima facie claim for SEB at the time he filed his Form 1008. The record at trial established that Winford's average weekly wage while working for Conerly was $914.38. Winford's average weekly wage while working for Womack was $389.00. Plaintiff also worked as a general contractor supervising a small renovation project for a married couple with whom he was familiar. Winford's combined wages for both the contracting job and Womack were far less than 90% of his pre-injury wages, which satisfied his prima facie burden. Winford testified at an earlier deposition, which was submitted as evidence at trial, that although Dr. Baker recommended that he perform only light to medium duty work, no such work was available with Conerly. During trial he admitted that although he continued his employment with Conerly, he "would take off here and there" because the pain was so severe he was not able to work. In his deposition Winford testified that while he worked for Womack, two of his co-workers covered for him when his pain became so severe that it impaired his ability to work. When questioned by Sheryl Story, attorney for defendant, the following exchange took place:
Q: Besides Rickey and George, was there anybody else at Womack that would kind of try to do the heavy work for you so that you could stay working?
A: Only them two.
Q: Only those two. So when you stopped working at Womack, it was because you were in so much pain, you couldn't do the job anymore; is that correct?
A: Yes.
Q: And your coemployees had tried to cover for you for a while, but they couldn't do it anymore; is that right?
A: That's true.
Dr. Baker testified that on October 18, 2001 he recommended that Winford have a FCE because plaintiff's condition had not improved and "I thought we should get the FCE so we could get him to work if we could find a job that would match his capacity." On this date, Dr. Baker recommended that Winford be limited to medium duty work. Later, on November 15, 2001, Dr. Baker made a note in Winford's medical records that he would contact plaintiff's insurance carrier to determine whether they would find employment for him that would be within the restrictions found in his FCE. Dr. Baker further testified that Conerly's workers' compensation insurance carrier was provided with a copy *571 of Winford's FCE. Finally, on March 15, 2002, Dr. Baker issued a work status report for light work activities. Although Dr. Baker had repeatedly recommended that plaintiff's employment duties be modified to compensate for his diminished capabilities, no such changes were forthcoming. Thus, the evidence is clear that Winford's ability to adequately perform his employment duties had diminished, and further, that his treating physician had noted that his condition was deteriorating. Such circumstances supported Winford's good faith, albeit mistaken, belief that his injuries were affecting his earning capacity and he was therefore entitled to SEB.
At the hearing on the matter, Conerly asserted that the Ritz Carlton renovation project paid a substantially higher wage as a result of time constraints associated with the project. The OWC hearing officer ultimately found that the lower wages plaintiff received after terminating employment with Conerly were not related to a loss of earning capacity as a result of his injuries. However, we find that Winford's misapprehensions regarding the reason that Conerly paid him a significantly higher average weekly wage than Womack does not render his original claim for SEB benefits groundless. Winford was not privy to the market vicissitudes which dictated his rate of compensation. Faced with a painful degenerating condition and a lower rate of compensation, Winford possessed reasonable grounds upon which to base his complaint. Therefore, we find that plaintiff's amended petition for TTD benefits relates back to his original timely filed claim for SEB benefits, and has not prescribed.

DECREE
For the reasons assigned, the judgment of the hearing officer is reversed, and this matter is remanded to the Office of Workers' Compensation for further proceedings.
VICTORY, J., concurs in the result.
TRAYLOR, J., concurs in the result.
WEIMER, J., concurs in the result and assigns reasons.
WEIMER, J., concurring.
I concur. This is a fact specific case. The plaintiff's amended petition, which was permitted by stipulation of the parties, relates back to his previously filed Form 1008.
NOTES
[1] Winford v. Conerly Corp., 03-1747 (La.App. 4 Cir. 3/31/04), 870 So.2d 651 (unpublished).
[2] Winford v. Conerly Corp., 04-1278 (La.10/8/04) 883 So.2d 1025
[3] § 1209. Prescription; timeliness of filing; dismissal for want of prosecution

A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident [Emphasis supplied].