# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-621

SHANE RICHARD

VERSUS

MACHINE SPECIALTY & MFG., INC.

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4,
PARISH OF VERMILION, NO. 04-02100,
SHARON MORROW, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell, Judges.

**AFFIRMED IN PART AS AMENDED;
REVERSED IN PART; AND REMANDED.**

Michael B. Miller
Attorney at Law
Post Office Drawer 1630
Crowley, Louisiana 70527
(337) 785-9500
Counsel for Plaintiff/Appellee/Appellant:
    Shane Richard

Merilla B. Miller
Johnson, Stiltner & Rahman
Post Office Box 98001
Baton Rouge, Louisiana 70898
(225) 231-0863
Counsel for Defendants/Appellants/Appellees:
    Machine Specialty & Mfg., Inc.
    Louisiana Workers' Compensation Corporation

SULLIVAN, Judge.

Machine Specialty and Manufacturing, Inc. (MSM) and its workers' compensation insurer, Louisiana Workers' Compensation Corporation (LWCC), appeal a judgment in favor of claimant, Shane Richard, denying their exception of prescription based upon the "developing injury" rule and awarding Mr. Richard weekly compensation benefits of $416.00, as well as penalties totaling $3,350.00 and attorney fees totaling $3,750.00 for various violations concerning the payment of medical benefits.[1] Mr. Richard has also appealed, seeking additional penalties and attorney fees for defendants' failure to pay indemnity benefits and additional attorney fees for work performed on appeal. We affirm in part as amended, reverse in part, and remand for the calculation of an additional penalty as explained below.

## Discussion of the Record

Mr. Richard, a machinist with MSM, injured his right shoulder on March 21, 2003, as he pulled on a "big chuck" (a wrench) while operating a manual lathe. He was treated that day at the Rehabilitation Hospital of Acadiana, where Dr. Galeno Sabilia, an internist, diagnosed a right arm strain. Dr. Sabilia prescribed hydrocodone, placed the right arm in a sling, and released Mr. Richard to light-duty work without the use of that arm. MSM then assigned Mr. Richard to its office, where he did some paperwork, but he continued to be paid the same salary as the machinist position. When his condition had not improved by March 31, 2003, Dr. Sabilia recommended an orthopedic evaluation.

Mr. Richard first saw Dr. Louis Blanda, an orthopedic surgeon, on April 15, 2003, at which time he reported that he was still experiencing a constant, throbbing

---

[1]The judgment of the Office of Workers' Compensation (OWC) itemized the penalties imposed as follows: $250.00 for a violation of La.R.S. 23:1127; $1,100.00 for a delay in the payment of a physical therapy bill; and $2,000.00 for a delay in the authorization of an MRI.

pain that would become intense upon using the right shoulder as the result of an initial injury that occurred while applying maximum force on a large wrench at work. Suspecting a torn rotator cuff, Dr. Blanda kept Mr. Richard on light-duty status and ordered an MRI. When the MRI failed to reveal a definite tear, but did show mild tendinosis and minimal fluid in the shoulder joint, Dr. Blanda diagnosed a possible grade I acromioclavicular (AC) separation and prescribed physical therapy. While undergoing physical therapy, Mr. Richard continued to work in the MSM office, receiving his pre-accident rate of pay. On August 21, 2003, after Mr. Richard had undergone twelve weeks of physical therapy, Dr. Blanda noted that the patient had done well with therapy, but was still experiencing residual pain and crepitus in the right shoulder. At that time, Dr. Blanda recommended a return to regular duty.

Rather than returning Mr. Richard to work on a manual lathe, MSM transferred him to the less strenuous position of operating a computerized lathe. Explaining the difference between the two machines, Mr. Richard stated that operating the manual lathe required use of the whole body to manually tighten a large "chuck" or wrench, whereas the tightening of the wrench on the computerized lathe was programmed. Additionally, the manual lathe required lifting up to fifty pounds, but the computerized lathe required lifting up to twenty pounds. Again, Mr. Richard was paid his pre-accident salary while operating this machine. According to Mr. Richard, he worked on the computerized lathe while still in pain, and he reported almost every day that his shoulder was hurting.

On November 4, 2003, Dr. Blanda noted that Mr. Richard had an AC separation that still produced pain while working and crepitus in the AC joint. Dr. Blanda considered that a Mumford resection of the distal clavicle might be

2

necessary if symptoms persisted. On December 12, 2003, Dr. Blanda recommended a repeat MRI after Mr. Richard reported increased shoulder pain since mid-November. In recording the source of the increased pain, Dr. Blanda's notes state that "the patient says he was pulling on a *broken car* and felt his shoulders pull." (Emphasis added.) Believing that Dr. Blanda's notes referred to an intervening, off-the-job accident, an adjuster for LWCC initially denied the request for an MRI. However, the request was later approved after Mr. Richard explained that he actually said he had been working on a "broken chuck" and that Dr. Blanda's office personnel thought he said "truck." After the second MRI revealed a normal study, Dr. Blanda suggested that Mr. Richard obtain a second opinion from another orthopedic surgeon, Dr. Michael Duval.

On March 24, 2004, one year and three days after his initial injury, MSM terminated Mr. Richard's employment. The separation notice stated: "1)Very low production when at work. 2) Not calling in when absent. 3) Excessive absen[ces]." Four months before his termination, his supervisor had noted that Mr. Richard "calls in sick frequently. He will also leave early complaining that he is hurting." Mr. Richard filed this disputed claim for compensation the day after he was fired, on March 25, 2004.

On August 31, 2004, Mr. Richard was examined by Dr. John Schutte, an orthopedic surgeon who works in the same office as Dr. Duval. Dr. Schutte noted full range of motion of the left shoulder, but diffuse tenderness of the right shoulder with winging of the right scapula upon raising the arm in forward elevation. Dr. Schutte believed that Mr. Richard suffered from rotator cuff tendinitis rather than a significant AC injury. He recommended a Lidocaine/Celestone injection along with a course of

3

anti-inflammatories and stretching. He also believed that a right upper-extremity EMG might determine the source of the scapular winging. Dr. Schutte stated that Mr. Richard could return to work, but that he would be limited in his ability to lift overhead.

Defendants filed an exception of prescription based upon the disputed claim being filed four days after the anniversary date of claimant's alleged accident. After a hearing that was not transcribed for this appellate record, the Workers' Compensation Judge (WCJ) deferred the exception to the merits, then denied it after trial, based upon the "developing injury" rule. Specifically, the WCJ found that a progression of injury was evidenced by (1) Dr. Blanda's records, which indicated continuing complaints after a full-duty release and a "plateau" period followed by worsening, and (2) by the employer's records, which noted substandard performance at work in the months before his termination. The WCJ then awarded Mr. Richard supplemental earnings benefits at the full rate and penalties and attorneys fees for various violations concerning medical benefits, but she denied his request for penalties and attorney fees for defendants' failure to pay indemnity benefits.

### The "Developing Injury" Rule

In their first assignment of error, defendants argue that the WCJ erred in concluding that Mr. Richard suffered a "developing injury." In their second assignment of error, defendants argue that the WCJ erred in failing to find that Mr. Richard sustained an intervening accident in November of 2003. Because these assignments involve discussion of much of the same evidence, we will consider them together.

4

Louisiana Revised Statutes 23:1209(A) (footnote omitted) (emphasis added)

provides in part:

> In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or *unless within one year after the accident a formal claim has been filed* as provided in Subsection B of this Section and in this Chapter. . . . Also, *when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.*

In *Sevin v. Schwegmann Giant Supermarkets, Inc.*, 94-1859, pp. 4-5 (La.

4/10/95), 652 So.2d 1323, 1325-26 (citations omitted) (bold emphasis added), the

supreme court discussed the "developing injury rule" as follows:

> Workers' compensation laws are to be liberally interpreted in favor of protecting workers from the economic burden of work-related injuries. In furthering that policy, this court has construed La.Rev.Stat. 23:1209 A's term "the time the injury develops" liberally in cases **in which the worker attempts to continue working until no longer able to perform his or her employment duties**. This court has consistently held that an employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the *disabling* injury, rather than from the first appearance of symptoms or from the first date of treatment. **The "time the injury develops," as interpreted to mean the date the disability develops, is usually determined as the time when it becomes clear that the worker can no longer perform his or her employment duties in a satisfactory manner.** Thus, the "developing injury" rule has been applied not only when the injury does not manifest immediately, **but also when the employee, after an accident in which injury is immediately apparent, continues to attempt employment duties until he or she is finally disabled from doing so**.
>
> The underlying rationale for this interpretation is that an injured employee who continues to work, despite a work-related medical condition which is painful but not then disabling, should not be penalized for attempting to remain in the work force in order to support his or her family or in the hope that the condition will improve. Requiring any injured employee, who is not yet disabled, to assert his or

her claim within one year of the accident (or one year of the last payment of benefits) in order to preserve the cause of action would encourage needless litigation.

Defendants contend that, because Mr. Richard was never able to return to his former job of operating a manual lathe, and because his complaints did not improve or worsen upon his return to work, the date of his original injury should be considered as the date that he could "no longer perform his . . . employment duties in a satisfactory manner." We disagree for the following reasons.

First, we note that defendants' argument is similar to one advanced and rejected in *Sevin*, 652 So.2d 1323, namely that the "developing injury" rule does not apply when symptoms from the initial injury continue uninterrupted without a period of latency. The supreme disagreed, explaining as follows:

> Defendant contends, however, that the "developing injury" rule applies only when the initially manifested injury becomes latent for some period and later remanifests itself. Defendant accordingly argues that the provision does not apply here *because plaintiff was never pain-free and has always related her disability to the initial accident*. We reject this distinction. *Plaintiff worked, although in pain, until she could work no longer*. She is exactly the type of accident victim that the "developing injury" rule was intended to benefit.

*Id.* at 1326 (emphasis added).

Second, we find that the WCJ's conclusion that a "progression of injury" did occur is supported by Mr. Richard's medical and employment records. At this point, we will also address defendants' second assignment of error, that Mr. Richard sustained an intervening accident in mid-November of 2003, since it involves consideration of the same evidence.

Dr. Blanda released Mr. Richard to full duty in August of 2003, after he had "done well" in physical therapy, but his continuing complaints after this release are well-documented. The basis of the claim of an intervening accident is the reference

6

in Dr. Blanda's notes to the "pulling on a broken car" associated with increased pain in mid-November of 2003. This notation led to an initial denial of an MRI because it raised suspicion of an off-the-job accident; however, Mr. Richard's explanation that he was actually referring to equipment at work was accepted by both the adjuster, who subsequently authorized the MRI, and the WCJ. The MRI taken after this alleged incident was normal, as opposed to the first MRI that showed mild tendinosis and some fluid buildup. We further note that, on November 4, 2003, at the doctor's visit before this incident was reported, Dr. Blanda recorded that Mr. Richard was still experiencing pain and crepitus in the right shoulder, leading Dr. Blanda to consider the possibility of performing a Mumford resection of the distal clavicle. Mr. Richard's supervisors' comments, which the supervisor signed on November 19, 2003, indicate that Mr. Richard had been calling in sick and complaining of pain at work presumably before that date. His separation notice in March of 2004 refers to "low production when at work" and "excessive absen[ces]." On this record, we find no error in the WCJ's conclusions that Mr. Richard's disability did not "develop" until after the date of his initial accident and that Mr. Richard did not sustain an intervening accident.

Finally, we find support for the WCJ's ruling in the cases cited by both sides to this controversy. In *Dautriel v. American Red Cross of SW Louisiana*, 04-254 (La.App. 3 Cir. 9/29/04), 883 So.2d 1083, *writ denied*, 04-2676 (La. 1/7/05), 891 So.2d 683, which Mr. Richard relies upon, the plaintiff sustained two job-related accidents in the year 2001, but continued to work with modifications (no heavy lifting) until her position was eliminated in June of 2002. She later filed for benefits in March of 2003. Finding that the plaintiff's disability did not manifest itself until

7

her termination, this court stated: "When the employer is no longer willing to provide a 'modified job' the employee is then disabled." *Id.* at 1085. *See also White v. Phoenix Pharmacy*, 03-1624 (La.App. 3 Cir. 4/7/04), 870 So.2d 592, *writ denied*, 04-1150 (La. 7/2/04), 877 So.2d 147, in which the plaintiff-cashier returned to work at her previous salary, even though her employer made several accommodations, including allowing her to use a stool, to take time off for physical therapy, and to refrain from heavy lifting. She resigned from this employment approximately one year later, but she continued to seek medical treatment. This court held that her claim for benefits, filed a year and a half after her accident, had not prescribed.

Defendants contend that the present case should be governed by *Whatley v. Insurance Co. of North America*, 154 So.2d 220 (La.App. 2 Cir.), *writ denied*, 244 La. 1019, 156 So.2d 225 (1963); however, we find that case distinguishable. In *Whatley*, the court found that the plaintiff's claim had prescribed because he failed to file suit within one year of being "fully informed as to the nature and effect of the injury" and, further, because the plaintiff's injury, the loss of one-third of the first joint of the right index finger, was not "of a slow developing nature." *Id.* at 223. In the present case, Mr. Richard has yet to obtain a definitive diagnosis of his shoulder condition. Dr. Blanda initially suspected a torn rotator cuff, but when this was not shown on either MRI, he opined that Mr. Richard sustained an AC separation. As late as May of 2004, however, Dr. Blanda recommended a second orthopedic opinion. In August of 2004, Dr. Schutte suspected rotator cuff tendinitis rather than a significant AC injury and suggested a course of treatment that Dr. Blanda had not pursued. Thus, the present record does not reflect that Mr. Richard was, at any time, "fully informed as

8

to the nature and effect of [his] injury." *Id.* Additionally, the evidence showing a progression of injury has already been discussed.

Defendants also cite *Beverly v. State, through the Department of Health & Human Resources*, 424 So.2d 446 (La.App. 5 Cir. 1982), a case in which the "developing injury" rule was found to apply. In *Beverly*, the plaintiff returned after an accident to her position as a "homemaker," but with restrictions of no heavy lifting, no climbing stairs regularly, and no mopping. She filed a claim for medical benefits over one year after the accident while she was still employed by the defendant at her same rate of pay. In holding that her claim had not prescribed, the court emphasized that "[s]he is paid her same salary and continues to work full days." *Id.* at 449. The court also stated that the purpose of the "developing injury" rule "is to provide a reasonable period of limitation in cases like this, where the injured workman continues on at his job and earns his wage, *even though he does not perform all the duties formerly assigned to him*." *Id.* (quoting *Wallace v. Remington Rand, Inc.*, 229 La. 651, 86 So.2d 522, 526 (1956)).

As the supreme court recognized in *Winford v. Conerly Corp.*, 04-1278, p. 6 (La. 3/11/05), 897 So.2d 560, 564 (citations omitted) (emphasis added):

> The jurisprudence has generally identified two situations that signify the date a developing injury was found to be disabling for the purpose of prescription. *The first is the date of termination of employment.* The second is the date of medical diagnosis where the diagnosis notifies a previously unaware injured employee of a disabling condition. Alternatively, the date of diagnosis is helpful in determining the date an employee became disabled where the record does not indicate the date when the employee became unable to work.

In the present case, Mr. Richard continued to work for the same employer at his pre-accident salary until his termination for "[v]ery low production when at work" and "excessive absen[ces]." His employer initially assigned him to its office while

9

he was on light-duty status, but after a course of physical therapy he returned to work as a machinist, albeit on a machine that was easier to operate, upon his release to regular duty. He remained on this machine until his termination some seven months later. His supervisor's review, dated four months before his termination, noted that he "calls in sick frequently. He will also leave early complaining that he is hurting." Under these circumstances, we find that, like the plaintiff in *Sevin*, 652 So.2d 1323, Mr. Richard is "exactly the type of accident victim that the 'developing injury' rule was intended to benefit" in that he "worked, although in pain, until [he] could work no longer." *Id.* at 1326. Accordingly, the WCJ did not err in ruling that Mr. Richard's workers' compensation claim, filed one day after his termination, had not prescribed.

**Penalties and Attorney Fees**

Mr. Richard has also appealed, seeking penalties and attorney fees for the defendants' failure to pay indemnity benefits. He argues that defendants failed to reasonably controvert the claim, given that the cases cited in support of their exception of prescription are either distinguishable or represent an application of the "developing injury" rule.

Louisiana Revised Statutes 23:1201 (emphasis added) provides in part:

> F. Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount *up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid* or such consent is withheld, *together with reasonable attorney fees for each disputed claim*; however, *the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . .* Penalties shall be assessed in the following manner:

(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. . . .

(2) This Subsection shall not apply if the claim is *reasonably controverted* or if such nonpayment results *from conditions over which the employer or insurer had no control*.

. . . .

J. Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, *only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim* filed pursuant to this Section, and an award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be imposed under this Section which precedes the date of the hearing.

We agree with Mr. Richard that defendants have failed to reasonably controvert his claim for indemnity benefits. Their arguments in favor of prescription are not supported by the facts established in the record or by the jurisprudence they have relied upon. Under La.R.S. 23:1201(F), Mr. Richard is entitled to the greater of twelve percent of any unpaid compensation or fifty dollars per day for each day the claim remains unpaid, with the fifty-dollar per day penalty subject to a $2,000.00 cap. Because it appears that the twelve percent penalty will exceed $2,000.00, we will remand the case for calculation of this additional penalty. *See Rivera v. M & R Cable Contractors, Inc.*, 04-985 (La.App. 3 Cir. 12/15/04), 896 So.2d 90. Recognizing that, under La.R.S. 23:1201(J), Mr. Richard is entitled to only one attorney fee for multiple violations, we increase the attorney fee awarded by the WCJ from $3,750.00 to $5,250.00 (an increase of $1,500.00) to reflect preparation and participation for the first hearing on the issue of prescription. We also award Mr. Richard additional attorney fees of $1,500.00 for the defense of this appeal.

**Decree**

For the above reasons, that portion of the judgment awarding Shane Richard indemnity benefits, penalties, and attorney fees is affirmed. That portion of the judgment denying penalties and attorney fees for the failure to pay indemnity benefits is reversed. The judgment is hereby amended to award Mr. Richard additional attorney fees of $1,500.00 for defending the prescription issue and $1,500.00 for defending this appeal, and the case is remanded to the Office of Workers' Compensation for calculation of the proper penalty for the failure to pay indemnity benefits. Costs of this appeal are assessed to Machine Specialty and Manufacturing, Inc. and Louisiana Workers' Compensation Corporation.

**AFFIRMED IN PART AS AMENDED; REVERSED IN PART; AND REMANDED.**