940 So.2d 694 (2006)
Gary W. MOORE, Plaintiff-Appellant
v.
TRANSMISSIONS, INC., Defendant-Appellee.
No. 41,472-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2006.
*696 Edward M. Campbell, Baton Rouge, for Appellant.
Janice B. Unland, Deanne B. McCauley, Covington, David B. Parnell, Jr., Baton Rouge, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
WILLIAMS, J.
Claimant, Gary W. Moore, filed a disputed claim for workers' compensation benefits against his employer, Transmissions, Inc., alleging he sustained an injury while in the course and scope of his employment. Following a hearing, the workers' compensation judge ("WCJ") concluded that claimant had forfeited his right to receive workers' compensation benefits by willfully making false statements under oath for the purpose of receiving workers' compensation benefits, a violation of LSA-R.S. 23:1208. The WCJ also denied claimant's request for penalties and attorneys fees. For the reasons that follow, we affirm the WCJ's ruling.

FACTS
Claimant was employed by Transmissions, Inc. as a "helper," whose various job duties included dismantling and cleaning transmissions, changing oil, moving transmissions and supplies, hauling scrap metal and cleaning the shop. Claimant alleged that on September 29, 2004, he was instructed to move a 100-300 pound transmission from one place in the shop to another using a jack. During the process of the move, the transmission fell from the jack and claimant attempted to catch it. Claimant alleged that the transmission fell onto his left foot, resulting in an injury. He also claimed that he injured his back when he attempted to catch the transmission.
No one in the shop witnessed the incident. However, Edward Oaks, who was standing several feet from claimant, testified that he heard the transmission fall to the floor. He stated that he looked over at claimant and saw claimant "kneeled down." Claimant told him that the transmission had fallen onto his foot, and he observed claimant "walking around limping."
*697 Debbie Copa, vice president and office manager of Transmissions, Inc., testified that she encouraged claimant to see a doctor that day, but he declined, stating that he would wait to see if his foot was better the following morning. Claimant was examined by a physician on Friday, October 1, 2004, two days after the incident. An x-ray revealed no fracture, dislocation or soft tissue injury. A physical examination of claimant's left foot showed no visible signs of injury and that claimant exhibited full range of motion in his foot and lower leg.
According to claimant's testimony, he began to experience pain in his lower back over the course of the weekend. On Monday, October 4, 2004, he sought treatment at Willis-Knighton Medical Center, where he complained of "severe" back pain and the inability to sleep. He was also treated for back pain at Willis-Knighton on two other occasions.
On November 11, 2004, claimant was examined by Dr. A. Edward Dean. At that time, claimant was complaining of back pain radiating to his left leg. An x-ray showed "narrowing and degenerative changes at the L5-S1 disability space." Dr. Dean diagnosed claimant with "degenerative L5 disc with sciatic pain." Dr. Dean prescribed medication and opined that claimant was unable to return to work.
Subsequently, claimant was treated for back pain at Louisiana State University Health Sciences Center-Shreveport. On March 22, 2005, an MRI showed that plaintiff had "degenerative changes at L4-5 and L5-S1 as described with probable annular tear and small disc protrusion at L3-4."
Transmissions, Inc. paid claimant's wages for one month following the incident, and it paid for his initial medical treatment. Soon thereafter, Transmissions, Inc. turned the matter over to its workers' compensation insurer, National Loss Control Management.
On November 17, 2004, claimant filed a disputed claim for workers' compensation benefits. Transmissions, Inc. denied all allegations in the claim and later filed a reconventional demand seeking restitution, alleging that claimant had made false statements for the purpose of obtaining workers' compensation benefits, in violation of LSA-R.S. 23:1208 and LSA-R.S. 23:1208.1.
Following a trial on the merits, the WCJ dismissed the claim with prejudice, at claimant's costs. The WCJ concluded that claimant was not a credible witness and that he had willfully made false statements under oath for the purpose of receiving workers' compensation benefits, a violation of LSA-R.S. 23:1208. The WCJ further noted that claimant had "a long history of previous back and other personal injuries for which he received monetary compensation."[1] The WCJ denied claimant's request for penalties and attorneys fees, finding that the employer had acted in good faith in its handling of the claim. Claimant appeals.

DISCUSSION
Forfeiture of Benefits
Claimant contends the WCJ erred in denying his claim for workers' compensation benefits. According to claimant, the WCJ erroneously concluded that he forfeited the benefits by willfully making false statements for the purpose of receiving workers' compensation benefits.
*698 It is unlawful for a person to willfully make a false statement or representation for the purpose of obtaining or defeating any workers' compensation benefit or payment. LSA-R.S. 23:1208(A). Any employee who makes such a willful false statement shall, upon determination by the WCJ, forfeit any right to workers' compensation benefits. LSA-R.S. 23:1208(E).
The only requirements for forfeiture of benefits under LSA-R.S. 23:1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Constr. Co., 1994-2708 (La.9/5/95), 660 So.2d 7. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Id.; Rosson v. Rust Constructors, Inc., 32,789 (La.App. 2 Cir. 3/1/00), 754 So.2d 324, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1105. Forfeiture is a harsh remedy and must be strictly construed. Wise v. J.E. Merit Constructors, Inc., XXXX-XXXX (La.1/21/98), 707 So.2d 1214.
Factual findings in workers' compensation cases are subject to the manifest error rule. Winford v. Conerly Corp., XXXX-XXXX (La.3/11/05), 897 So.2d 560. Under this rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. Id. (citing Stobart v. State, XXXX-XXXX (La.4/12/93), 617 So.2d 880). When there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, even when the appellate court is convinced it would have weighed the evidence differently had it been sitting as trier, the court of appeal may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety. Id.; Williams v. Saint Gobain Containers, 39,313 (La.App. 2d Cir.1/26/05), 893 So.2d 144.
In Johnikin v. Jong's, Inc., 40,116 (La. App. 2d Cir.9/21/05), 911 So.2d 413, the claimant suffered a back injury after she slipped and fell during the course and scope of her employment. She testified that she had never had a back injury prior to her fall at work. However, her medical records showed that three years prior to her work-related injury, the claimant had been treated at a clinic for complaints of back pain as a result of an automobile accident. Additionally, one year prior to the accident at work, the claimant had been treated for a back injury as a result of a fall. This court affirmed the WCJ's ruling that the claimant had forfeited her right to receive workers' compensation benefits.
Similarly, in Smith v. Riverwood International, 35,727 (La.App. 2d Cir.2/27/02), 810 So.2d 1175, writ denied, XXXX-XXXX (La.5/31/02), 817 So.2d 101, the claimant denied having prior back problems or prior treatment for back problems. However, her medical records demonstrated that she had been treated for a 1996 back injury resulting from a motor vehicle accident. She also denied having a previous back injury to her physicians. This court upheld the WCJ's ruling that the claimant had forfeited her rights to workers' compensation by making false statements with regard to her medical history and treatment.
As in Johnikin and Smith, the questions posed to claimant herein with regard to prior injuries were straightforward and not subject to misinterpretation. On November 9, 2004, Winston Smith, a claims adjuster for the workers' compensation insurer, obtained a recorded statement from claimant in which he denied prior work-related injuries, back injuries and automobile *699 claims or settlements. The colloquy was as follows:
Q: You ever had a worker's comp claim before?
A: Never had nothing.
Q: No injuries at work before?
A: Nope.
Q: Okay, no auto claims? Any settlement things in the past?
A. No.
* * *
Q: Okay, have you had any prior back problems before?
A: No, never had no back problems.
Q: No neck problems?
A: No neck problems, nothing.
Q: Okay. Any leg problems?
A: No leg problems, no cut on, no surgery, or no nothing.
* * *
Q: Okay. No prior medical problems.
A: No prior medical problems.
* * *
Q: Okay. No prior back problems.
A: No prior back problems.
On November 18, 2004, claimant was interviewed by Ray Cedor, an insurance adjuster, in which he stated the following:
Q: Have you ever before in your life suffered from or been treated for any problem involving your lower back?
A: No, no.
* * *
Q: All right. Ever before suffered from or been treated for any problem, like in that upper back, left shoulder area?
A: No.
* * *
Q: All right. Accidents away from work, non-work-related, even from childhood . . . getting hurt bad enough to go get treated?
A. No.
Q: Being in a car wreck as an adult. Ever been hurt in a car wreck or anything?
A: I had a car wreck about 20 years ago.
Q: Did you get hurt?
A: I gotwe got hurtmy daddy got hurt
* * *
Q: Well, do you remember what was hurt in that car wreck? I know it's a long time ago. What parts of your body were hurt?
A: Shoot, I couldn't tell you right now.
Q: All right. Do you remember where'd you get treated, or did you get any treatment?
A: I don't think I got no treatment.
Q: All right. Any other times you can ever remember being in a car wreck getting hurt?
A: No.
* * *
Q: All right. Have you made or settled. . . . Ever made or settled what we call a personal injury claim? This would bethis is a comp claim [be]cause you had an accident on the job. If you'd been hurt in that car wreck that you said with your dad 20 years ago you might have made an insurance claim, got a settlement?
A: No.
Q: Have you ever made a settlement for any kind of an injury claim?
A: Best of my knowledge, no.

*700 Q: Do you think you'd remember if you'd filed a claim, made a settlement of any kind?
A: If I think I didNo, I know I didn't.
Q: Yeah. Have you ever filed a lawsuit?
A: No.
Similarly, in his deposition, claimant denied having any prior injuries and denied ever filing a lawsuit. However, an investigation into the claim revealed that claimant had suffered a fracture of the left transverse process vertebrae at L3, which was noted in 1991. The investigation also revealed that claimant was struck by an automobile while riding a bicycle on May 23, 1987. He filed a lawsuit, alleging that he had incurred $2,000 in medical expenses as a result of the accident. The record further showed that claimant filed another lawsuit in 1994 in connection with an automobile accident. In the 1994 petition for damages, claimant alleged that he had sustained various injuries, including injuries to his neck and back.
During his testimony at trial, claimant admitted that he had been involved in two prior automobile accidents, one 10 years prior to the incident in question, and another 20 years prior to the incident. During his testimony, claimant denied receiving a settlement for the 1994 accident. However, the record showed that claimant underwent treatment with a chiropractor for several months for complaints of neck and back pain and received a settlement for the sum of $4,569. Claimant explained that he did not reveal the prior accidents and injuries because he did not recall the accidents when he was questioned by the investigators. He also testified that he had never been told that he had a fractured vertebra as shown in the 1991 x-ray.
Furthermore, in his deposition, claimant testified that he told the physician that he was experiencing back pain during his initial examination on Friday, October 1, 2004. However, he later testified that his back did not begin to hurt until over the weekend, "Friday or Saturday night."
It is clear that the record in this case supports the WCJ's finding that claimant violated LSA-R.S. 23:1208 by willfully making false statements for the purpose of receiving workers' compensation benefits. The transcripts from claimant's depositions and his statements to the investigators show that the questions posed to claimant with regard to prior injuries, medical conditions, accidents or lawsuits were unambiguous. Claimant consistently misrepresented his prior medical, accident and litigation history. Moreover, claimant's medical records indicate that he denied previous back injuries to his physicians. The volume and persistence of these misrepresentations, most of which were made under oath and in the presence of counsel, forecloses the hypothesis that the statements were inadvertent or inconsequential.
Under these facts, we find that the WCJ did not err in concluding that claimant violated LSA-R.S. 23:1208, and therefore, he forfeited his right to workers' compensation benefits. This assignment lacks merit.
Penalties and Attorney Fees
Claimant also contends the WCJ erred in failing to impose penalties and attorney fees against Transmissions, Inc. for the failure to pay workers' compensation benefits. Transmissions, Inc. maintains the WCJ properly denied claimant's demand for penalties and attorney fees.[2]
*701 Penalties and attorney fees may be awarded for failure to provide payment of indemnity or medical benefits. LSA-R.S. 23:1201(F). Such penalties and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. Id. However, the penalty is not imposed if the claim is reasonably controverted or if nonpayment results from conditions over which the employer or insurer had no control. Id.
An employee has the burden of proving his entitlement to statutory penalties for the employer's failure to timely pay workers' compensation benefits. Williams v. Mark Johnson Plumbing, 38,954 (La.App. 2d Cir.9/22/04), 882 So.2d 1193; Bolton v. Mike Fleming Const., 36,521 (La.App. 2d Cir.12/11/02), 833 So.2d 1177. To reasonably controvert a workers' compensation claim, so as to avoid imposition of penalties and attorney fees, the employer and its insurer must provide sufficient factual and medical information to reasonably counter the evidence provided by the claimant. Id. To meet this standard, the employer must have some "valid reason or evidence upon which to base his denial of benefits." Feild v. General Motors Corp., 36,339 (La.App. 2d Cir.9/18/02), 828 So.2d 150, 159.
Penalties are stricti juri and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Bolton, supra. The WCJ has great discretion in deciding whether to award or deny penalties and attorney fees and such decision will not be disturbed absent abuse of that discretion. Williams, supra; Fisher v. Lincoln Timber Co., 31,430 (La.App. 2d Cir.1/24/99), 730 So.2d 973.
In this case, we find that Transmissions, Inc. reasonably controverted the claim, and claimant is not entitled to penalties and attorney fees.[3] Immediately following the incident in question, claimant complained of pain in his left foot. His medical records from his initial visit to the clinic on October 1, 2004 show that claimant was treated for the injury to his foot, and no mention of back pain is in that record. Debbie Copa testified that claimant came to the shop on October 1, 2004, after seeing the doctor. According to Copa, claimant stated that he had to "stay off his foot for about a week," but he did not mention back pain.
Furthermore, the record demonstrates that claimant was experiencing back pain prior to the September 29, 2004 incident. Several witnesses testified that on various occasions, they saw claimant "hunched over in pain" or exhibiting pain when attempting to rise from a chair. Copa testified that, prior to the accident at work, claimant told her that he was having back pain. Edward Oaks testified that he had overheard claimant state that his back was hurting, and he had observed claimant performing *702 his job duties while sitting on a stool due to back pain. Ron Tullis, Travis Larrick and Bob Daniels testified that, prior to the work-related accident, claimant told them that he had injured his back while moving transmission parts at another transmission shop.
We find no error in the WCJ's ruling. This assignment lacks merit.

CONCLUSION
For the reasons stated above, we affirm the judgment of the Office of Workers' Compensation at appellant's costs.
AFFIRMED.
NOTES
[1] Consequently, the WCJ referred the matter to the Fraud Unit of the Louisiana Office of Workers' Compensation Administration for further proceedings.
[2] In certain instances, a claimant who has forfeited the right to receive workers' compensation benefits may be entitled to an assessment of penalties and/or attorney fees. See, Jim Walter Homes, Inc. v. Guilbeau, XXXX-XXXX (La.App. 3 Cir. 6/21/06), 934 So.2d 239; Leonard v. James Industrial Constructors, XXXX-XXXX (La.App. 1 Cir. 5/14/04), 879 So.2d 724, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1139; Apeck Constr., Inc. v. Bowers, XXXX-XXXX (La.App. 3 Cir. 12/10/03), 862 So.2d 1087, writ denied, XXXX-XXXX (La.4/23/04), 870 So.2d 301. In these cases, the appellate courts affirmed the determinations that the evidence was sufficient to prove the claimants had made false statements. However, after concluding that the claimants' benefits could only be prospectively forfeited from the dates the false statements were made, the courts affirmed the judgments assessing penalties and attorney fees.
[3] We must point out that Transmissions, Inc. paid for claimant's initial medical treatment for the injury to his foot and continued to pay his wages for one month following the accident. Thereafter, the matter was turned over to the workers' compensation insurer.