446 So.2d 879 (1984)
Jake B. REED
v.
LOUISIANA HY-PRO, INC., et al.
No. 83 CA 0314.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
*880 Otha Curtis Nelson, Sr., Baton Rouge, for plaintiff-appellant Jake B. Reed.
Thomas A. Lane, Baton Rouge, for defendant-appellee Louisiana Hy-Pro Inc. and U.S. Fidelity & Guar. Co.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
Plaintiff appealed the judgment awarding him some workmen's compensation benefits but denying penalties and attorney's fees.
The issues are the extent of plaintiff's disability and the denial of penalties and attorney's fees.
We affirm in part and reverse and render in part.
Plaintiff sustained an injury to his right chest and shoulder area and burns to his left foot and ankle while in the course and scope of his employment as a heavy equipment operator for defendant, Louisiana Hy-Pro, Inc. Defendant, United States Fidelity and Guaranty Company (USF & G), paid plaintiff compensation benefits from April 2, 1981 through May 28, 1981 and again from April 21, 1982 to the date of trial.
The trial court found that plaintiff was entitled to compensation benefits for the forty-seven week period between May 28, 1981 and April 21, 1982; and that thereafter plaintiff was entitled to disability benefits only through October 28, 1982. Penalties and attorney's fees were denied.
Dr. Charles R. Chesnutt, an expert in the field of industrial medicine, treated plaintiff following the accident on April 2, 1981. He diagnosed a contusion to the chest, but x-rays revealed no rib fracture or other abnormality. Dr. Chesnutt later prescribed a rib belt for support.
Dr. Chesnutt testified that plaintiff suffered a second degree burn to the left foot and ankle with one or two small areas of third degree burn. The injury presented slow steady healing and on April 27, 1981, Dr. Chesnutt noted that plaintiff was to return in three days to discuss the possibility of a skin graft operation. Plaintiff did not return on that date. The last time Dr. Chesnutt examined plaintiff was on December 28, 1981, at which time he believed plaintiff's foot was healed.
*881 Plaintiff was referred by his attorney to Dr. Marvin Clifton. Dr. Clifton's report, dated March 18, 1982, prescribed medication for plaintiff and recommended physical therapy.
Jeffrey Samson, the USF & G claims adjuster handling plaintiff's claim, testified that when he received Dr. Clifton's medical report, he requested that plaintiff be examined by an independent doctor. Samson selected Dr. Joseph W. Laughlin, whose initial examination of plaintiff on April 21, 1982, was similar to Dr. Clifton's. Samson reinstituted compensation benefits beginning that date.
Dr. Laughlin, an expert in the field of orthopedics, recommended that plaintiff undergo physical therapy for his right shoulder and left foot and ankle and that he undergo the physical therapy program prior to return to employment. Dr. Laughlin did not assign a disability rating.
Plaintiff underwent physical therapy from July 6, 1982 through July 16, 1982. Dr. Laughlin reexamined him on July 29, 1982 at which time there was significant improvement in the range of motion of the left ankle and shoulder area. Dr. Laughlin noted in his report that plaintiff had significantly improved to the point that he felt plaintiff was able to return to work. He prescribed a shoe with special liners to prevent skin irritation to the foot.
Dr. Laughlin next examined plaintiff on September 30, 1982, noting further improvement. Dr. Laughlin recommended that plaintiff try to return to work on a regular status.
Plaintiff was last examined by Dr. Laughlin on October 28, 1982. Plaintiff noted no particular pain in the right shoulder area but stated he continued to have intermittent pain in the right rib cage which seemed to plaintiff to be aggravated by some activities at work. The corrective shoe provided plaintiff a significant amount of relief and examination of the ankle revealed a full range of motion. Dr. Laughlin told plaintiff he would see him on an "as needed" basis as regular examinations were not necessary. He again indicated plaintiff could return to work.
Plaintiff testified the physical therapy did a lot of good, but that when he tried to return to work he was too slow and was in pain. He testified he still suffers pain.
We believe that plaintiff failed to prove that he suffers substantial pain rendering him incapable of performing the tasks of his former employment or of any other gainful employment. The medical evidence shows that he can return to work without restriction. The trial court's finding that plaintiff was not totally and permanently disabled was not clearly wrong.
The trial court also found that giving a liberal interpretation to the medical evidence, and particularly to Dr. Laughlin's last medical report, disability benefits were due only through October 28, 1982. We find no manifest error.
Plaintiff alleges that he is entitled to penalties and attorney's fees because of USF & G's termination of benefits on May 28, 1981.
Samson testified that his decision to terminate benefits was based on Dr. Chesnutt's medical report which stated that Dr. Chesnutt assumed plaintiff was well because plaintiff had not returned for follow-up appointments.
Plaintiff testified he was arrested and incarcerated on either April 29, 1981, or May 1, 1981 and remained in jail until early October, 1981. Upon his release plaintiff went back to Dr. Chesnutt. Samson testified he did not know that plaintiff was in jail until some time after his incarceration.
We do not have the benefit of Dr. Chesnutt's report as it was not introduced into evidence. USF & G offered no other evidence as to facts it relied on to terminate benefits. There is no indication in the record as to whether Dr. Chesnutt released plaintiff to return to work or what plaintiff's medical condition was when payments were stopped. Nor does the record indicate whether Samson made further inquiries into plaintiff's condition or work status.
*882 A compensation insurer is only liable for penalties and attorney's fees when its failure to pay benefits is arbitrary, capricious or without probable cause. La.R.S. 22:658.[1]
An injured employee's benefits may not be stopped on the basis of inconclusive medical reports. It is incumbent upon insurers to make reasonable efforts to ascertain the employee's exact medical condition at the time benefits are stopped. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983); Salvador v. Slidell Industries, Inc., 415 So.2d 511 (La.App. 1st Cir.1982).
Under these circumstances, we find that USF & G's termination of benefits based solely on Dr. Chesnutt's report which assumed plaintiff was well, was arbitrary and capricious and the compensation insurer is liable for penalties and attorney's fees.
USF & G will be cast in judgment for a penalty of twelve percent of the $7,332.00 due for the forty-seven week period in which compensation benefits were not paid.
The award of attorney's fees is in the form of a penalty and the amount need not be proven. Orgeron v. Tri-State Road Boring, Inc., supra. We believe an award of $3,000.00 for the attorney's services, including the trial and appeal in this matter, is reasonable and appropriate.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it denies plaintiff recovery of penalties and attorney's fees. Plaintiff is awarded the penalty amounting to twelve percent of the total amount of the claim due and $3,000.00 in attorney's fees. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] La.R.S. 22:658:

All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.