682 So.2d 782 (1996)
Joseph T. STELLY, Plaintiff-Appellant,
v.
GUY SCROGGINS, INC., et al., Defendants-Appellees.
No. 96-401.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Rehearing Denied November 22, 1996.
*783 Edward J. Milligan, Jr., Lafayette, for Joseph T. Stelly.
Gregory John Laborde, Lafayette, for Guy Scroggins, Inc.
Before DOUCET, C.J. and YELVERTON and PETERS, JJ.
PETERS, Judge.
This is a workers' compensation suit in which Joseph T. Stelly seeks reinstatement of workers' compensation benefits as well as medical expenses, penalties, and attorney fees from his former employer, Guy Scroggins, Inc. (Scroggins), and its insurer, The Gray Insurance Company (Gray Insurance).[1] Stelly sustained an accident and injury which occurred in the course and scope of his employment with Scroggins. The hearing officer rendered judgment in favor of the defendants and dismissed Stelly's claims. Specifically, the hearing officer found that Stelly's condition, ankylosing spondylitis, was not compensable because it was not caused by the accident and that if any injury did occur as a result of the accident, it was of very short duration. Stelly appeals, contending that the hearing officer erred in determining that he did not sustain an injury or that an accident did not occur, that the ankylosing spondylitis was not compensable, and that no further compensation benefits were due.

DISCUSSION OF RECORD
The parties stipulated that on September 21, 1993, Stelly was employed by Scroggins as a laborer and that while in the course and scope of his employment, he suffered an accident and injury. They further stipulated that Gray Insurance paid weekly compensation benefits to Stelly until December 22, 1993, at which time benefits were terminated based on reports submitted by Dr. Clifton W. Shepherd, a Lafayette, Louisiana orthopedic surgeon. At trial, Stelly testified that he slipped and fell while he and another employee were carrying a pump. He testified that *784 immediately thereafter, "[i]t felt like it got hot" in his lower back. Stelly did not immediately seek medical attention but continued to work for the rest of his shift. According to Stelly, his condition worsened that evening and he sought medical attention at the Opelousas General Hospital emergency room. His complaints at the hospital that night included burning and stiffness. He was diagnosed as having muscle strain in his right shoulder but was not admitted.
Two days later, on September 23, 1993, Stelly saw Dr. Emile K. Ventre, an Opelousas, Louisiana general practitioner. Stelly presented Dr. Ventre with complaints of pain in the lumbosacral area, running up to his neck. Dr. Ventre noted that there was some muscle spasm but that it was not severe. Dr. Ventre testified that Stelly only allowed thirty degrees flexion of his back and that he had poor motion in all directions. Additionally, Stelly had seventy-five percent of the normal range of motion in his neck. Dr. Ventre x-rayed the cervical, thoracic, and lumbar areas of Stelly's spine. The X-rays were negative for any bony abnormalities. Dr. Ventre's tentative diagnosis was cervical and lumbar sprains. However, he testified that he also found a significant psychological overlay. Under Dr. Ventre's supervision, on October 22, 1993, Stelly underwent a CAT scan of the lumbar spine, and on October 29, 1993, he underwent an MRI of the cervical spine. Both tests were normal. Stelly saw Dr. Ventre on eight occasions after the initial visit through December 9, 1993. Dr. Ventre was of the opinion that Stelly had a "good bit" of psychological overlay and that Stelly tended to exaggerate all of his complaints.
On November 30, 1993, Stelly saw Dr. Shepherd at the request of Gray Insurance. Stelly presented Dr. Shepherd with complaints of back pain and pain radiating from his back into his neck. Dr. Shepherd observed a left-sided limp but felt this to be exaggerated behavior. On examination, the doctor found no muscle spasm, and a neurological examination failed to show any neurological deficit. X-rays of Stelly's neck and back were also normal. A second MRI was performed under the direction of Dr. Shepherd, and the doctor reviewed a prior CAT scan. In Dr. Shepherd's opinion, both were normal. On December 23, 1993, Dr. Shepherd again saw Stelly. Based on his examinations and the fact that three months had passed since the accident, Dr. Shepherd concluded that Stelly could be released from care without restriction. The defendants terminated workers' compensation benefits based on Dr. Shepherd's reports. Thereafter, Dr. Ventre also discharged Stelly from his care.
However, this was not the end of Stelly's complaints. On January 12, 1994, he again went to the Opelousas General Hospital emergency room, this time complaining of severe pain in his back. An examination at the hospital revealed that he was suffering from spasm of the lower lumbar paraspinal muscle.
On February 17, 1994, Stelly saw Dr. Louis C. Blanda, Jr., another Lafayette, Louisiana orthopedic surgeon. Stelly presented Dr. Blanda with complaints of pain in his neck and back. Upon examination, Dr. Blanda found pain with range of motion, stiffness in the back and neck, mild pain with a straight leg raising test, and some tenderness in the back and along the left S-1 joint. X-rays of Stelly's neck and back appeared normal at that time. Dr. Blanda's impression was that Stelly suffered from some type of muscular pain syndrome. However, he found no objective signs of any injury and no muscle spasm in the neck and back on that day. Additionally, he found nothing in his examination of the prior CAT scan and MRI's that caused him to disagree with the prior interpretation by the radiologists that the tests were negative for both a herniated disk and stenosis. He recommended a course of physical therapy.
Stelly saw Dr. Blanda again on March 17, 1994. On this exam, Stelly demonstrated spasm in his neck and lower back. A myelogram was subsequently performed, which yielded normal results. On April 21, 1994, Stelly again saw Dr. Blanda and again had muscle spasm in his neck and back.
On May 16, 1994, Stelly returned to Dr. Shepherd with complaints similar to those made in the previous visits. Dr. Shepherd's *785 examination revealed physical findings similar to those made in the two previous visits as well. Dr. Shepherd felt Stelly's behavior was exaggerated. By this time, Stelly had undergone cervical and lumbar myelograms and post-myelogram CAT scans, which were all basically normal, and Dr. Shepherd's opinion remained unchanged.
Stelly saw Dr. James R. Lafleur, a Lafayette, Louisiana orthopedist, for an independent medical examination. In his report of July 11, 1994, Dr. Lafleur stated that "[i]n view of the fact that the patient has in essence a normal physical examination as well as normal investigative studies, I would recommend that he return to his preinjury work duties."
On August 2, 1994, Stelly saw a chiropractor. According to Stelly, the chiropractor treated him for a period of time but the treatment did not help.
On October 20, 1994, Stelly saw Dr. Scott A. Gammel, a Lafayette, Louisiana specialist in anesthesiology and pain medicine. This consultation and examination arose as a result of a referral from a Dr. Chiriboga. Dr. Gammel found muscle spasm along the entire spine as well as tenderness over the interspinous region and on the cervical, thoracic and lumbar areas of the spine. He was of the opinion that Stelly had a severe chronic myofascial pain syndrome, likely secondary to an interspinous/supraspinous ligament sprain. He started Stelly on a plan of muscle relaxant and pain therapy. Later treatment included interspinous ligament injections. In conjunction with Dr. Gammel's recommendations, Stelly was admitted to Rehabilitation Hospital of Lafayette on January 20, 1995, where he stayed until January 31, 1995. During his hospitalization, he underwent a physical therapy and occupational therapy program, was on oral pain medication, and received epidural treatment.
On March 23, 1995, almost one year after his initial consultation, Stelly again saw Dr. Blanda. According to Dr. Blanda, Stelly "really looked a lot worse" and exhibited severe chronic-type back pain. Dr. Blanda detected a marked amount of muscle spasm and severe rigidity. Dr. Blanda again x-rayed Stelly and this time noted some subtle changes. Specifically, while the lumbar spine appeared normal, Stelly's pelvic X-rays showed some changes in the sacroiliac joints, where the joints were beginning to become fused. Dr. Blanda found this to be a very early sign of Marie-Strumpell's arthritis. The results of blood tests ordered by Dr. Blanda were apparently consistent with this diagnosis.
As a result of these findings, Dr. Blanda referred Stelly to Dr. Ladislas Lazaro IV, a Lafayette, Louisiana rheumatologist, who diagnosed Stelly as having ankylosing spondylitis. Stelly first saw Dr. Lazaro on April 10, 1995. At that time, Dr. Lazaro did not detect any significant amount of spasm in the muscles but noted that Stelly's range of motion was very limited, with less than ten degrees of flexion or extension in any plane. The results of several medical tests ordered by Dr. Lazaro revealed that Stelly's C-reactive protein test, which is a marker for inflammation in the blood, was extremely elevated and his sedimentation rate, another marker for inflammation in the blood, was slightly elevated. Additionally, Stelly's HLA-B27 was positive, which indicated Stelly was genetically disposed to ankylosing spondylitis. Dr. Lazaro also reviewed X-rays of the lumbar spine, which he concluded showed some sclerosis of both S-1 joints. Based on his examination and the test results, he diagnosed Stelly as suffering from ankylosing spondylitis. Dr. Lazaro described the disease as one of the seronegative inflammatory polyarthritis conditions and categorized Stelly's condition as extremely severe. At the time of trial, Stelly was still under the care of Dr. Lazaro and Dr. Gammel.

OPINION

Causation
In her reasons for judgment, the hearing officer stated that she did not find Stelly to be credible and questioned whether an accident ever happened in the first place. She found that if any injury did occur, it was of a very short duration, that the manifestations of Stelly's injury were manufactured or greatly exaggerated, and that the ankylosing spondylitis was a gradual and progressive *786 condition which was triggered by inactivity, and not the injury. Additionally, the hearing officer found that Stelly's inactivity after the date of the accident was the result of his own choice and that the "very minor objective findings" did not warrant inactivity. Thus, the hearing officer concluded that Stelly was not entitled to a presumption of causation.
Stelly contends that the hearing officer erred in determining that he did not sustain an injury or that an accident did not occur. We agree. The record does reveal minor discrepancies in Stelly's description of the accident. However, the parties stipulated that Stelly suffered an accident and injury while in the course and scope of his employment. A stipulation binds all parties and the court and is the highest form of proof. Eubanks v. State, DOTD, 620 So.2d 954 (La.App. 3 Cir.), writs denied, 629 So.2d 351, 353 (La.1993).
Dr. Ventre and Dr. Shepherd were the only two physicians who noted exaggeration on the part of Stelly. Dr. Ventre was selected by Stelly, and Dr. Shepherd was selected by Gray Insurance. However, during treatment, neither physician was aware of Stelly's predisposition to ankylosing spondylitis, and there is no dispute that Stelly suffers from ankylosing spondylitis. None of the tests ordered by Dr. Ventre or Dr. Shepherd revealed Stelly's condition, and only those later physicians having the benefit of specialized blood tests were able to properly diagnose the condition. Ordinarily, the testimony of an employee's treating physician should be afforded more weight than that of an examining physician. Guidry v. Picadilly Cafeterias, Inc., 95-12 (La.App. 3 Cir. 5/24/95); 657 So.2d 325, writ denied, 95-1601 (La. 9/29/95); 660 So.2d 870. Additionally, positive findings as to the existence of an injury are to be given greater weight than negative findings. Id. Moreover, when the subject at issue concerns the particular field of a specialist's expertise, the testimony of the specialist is entitled to greater weight than that provided by other medical experts. Johnson v. La. Dep't of Health & Human Resources, 590 So.2d 854 (La.App. 3 Cir. 1991). In this case, the ultimate diagnosis of the condition was made by Dr. Lazaro, a specialist in the field of rheumatology.
The medical experts seem to be in agreement that the cause of ankylosing spondylitis is unknown but that the condition would not have been caused by the accident. Rather, the issue is whether the condition was aggravated or exacerbated by the accident. An employee's preexisting condition does not bar his recovery under the workers' compensation laws since an employer must take the employee as he finds him. Baker v. Conagra Broiler Co., 93-1230 (La.App. 3 Cir. 5/4/94); 640 So.2d 494, writ denied, 94-1435 (La. 9/23/94); 642 So.2d 1289. An abnormally susceptible employee is entitled to no less protection under the workers' compensation law than a healthy employee. Id. It is immaterial that the employee's diseased or weakened condition might have eventually produced the disability outside of the employment setting. Id. In other words, the employee's claim for benefits will not be disqualified if the work-related injury aggravates, accelerates, or combines with a disease or infirmity to produce disability for which compensation is claimed. Id. Additionally, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability when the employee proves that before the accident he had not manifested disabling symptoms but that commencing with the accident the disabling symptoms appeared and manifested thereafter and medical or circumstantial evidence indicates a reasonable possibility of a causal connection. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985).
In the instant case, the parties stipulated to the existence of the accident and injury. The fact of injury was confirmed by Dr. Ventre, who did find some mild spasm on the initial visit just two days after the accident. Stelly testified that he had not suffered any similar problems or occurrences before the accident and that he had never previously injured his back. There is no testimony to contradict Stelly in this regard. However, after the accident, Stelly began complaining of neck and back pain and received extensive treatment for his complaints.
*787 Dr. Lazaro, a treating physician, testified that someone of Stelly's age and with his degree of sacroiliitis should be very mobile. He testified that based on Stelly's degree of disease, he would not expect Stelly to be so limited without some exacerbating factor. Dr. Lazaro was of the opinion that the exacerbating factor was the back injury, which rendered Stelly inactive for a prolonged period of time. According to Dr. Lazaro, inactivity is by far the worst thing for ankylosing spondylitis and even just a matter of days of inactivity could trigger the condition mildly. He thought that Stelly's period of inactivity contributed to the severity of the ankylosing spondylitis and to Stelly's present condition. Furthermore, Dr. Lazaro testified that Stelly's complaints were definitely consistent with the degree of physical findings and that he had no reason to suspect Stelly was invalid at any point. Dr. Blanda, also a treating physician, indicated that the accident may have been an aggravating factor but deferred to Dr. Lazaro for specifics in this regard. Dr. Gammel, another treating physician, testified that trauma can exacerbate symptoms of ankylosing spondylitis and that in particular the resting after trauma can initiate the first experience of symptoms. He was of the opinion that Stelly's symptoms may have been aggravated by the injury. Dr. Gammel stated that it was quite likely that the injury was responsible for greater than ninety percent of the exacerbation, given that Stelly had not experienced any symptoms consistent with ankylosing spondylitis prior to the injury.
We find the hearing officer failed to properly apply the law to the case at hand. Since an exacerbation of an injury due to a work-related accident is compensable, the hearing officer erred in failing to find causation. We do not find that the record supports that the inactivity was Stelly's own choice or that the objective findings did not warrant the inactivity. Stelly went to the emergency room the night of the accident and came under Dr. Ventre's care just two days following the accident. We have not found that he was released from medical care by Dr. Ventre or Dr. Shepherd until at least December of 1993, just over three months after the accident. Since the employer takes the employee as it finds him and since exacerbation of a preexisting condition is compensable, Stelly is entitled to compensation benefits to the extent of his disability resulting therefrom.

Extent of Disability
La.R.S. 23:1221(1)(c) provides that when the employee is not engaged in any employment, the employee shall be awarded temporary total disability benefits only if the employee proves by clear and convincing evidence that he is physically unable to engage in any employment.
At the time of Dr. Lazaro's deposition, Stelly was still under his care. Dr. Lazaro found it hard to predict whether Stelly would be able to return to employment at some future point, in light of the severity of Stelly's condition. In any event, Dr. Lazaro was of the opinion that Stelly would be unable to return to heavy manual-type labor, even with positive results on his recovery from ankylosing spondylitis. He testified that Stelly could do light labor, but he did not think Stelly would ever be able to return to a job that required heavy lifting because he was going to have a chronic disease in his back. Dr. Blanda had Stelly on a no-work status throughout the course of his treatment of Stelly. Dr. Gammel was of the opinion that if any type of employment would be available to Stelly, it would be sedentary. In light of the foregoing, we find that Stelly is entitled to temporary total disability benefits retroactive to the date of termination of the benefits by the defendants.

Medical Expenses
La.R.S. 23:1203(A) requires the employer to furnish all necessary medical treatment. Since we have reversed the dismissal of Stelly's claim and have held that the work-related accident exacerbated his ankylosing spondylitis, Scroggins must furnish all necessary medical treatment in connection with the exacerbation of that condition.

DISPOSITION
For the foregoing reasons, we reverse the judgment of the hearing officer. We render judgment in favor of Stelly for reinstatement *788 of temporary total disability benefits in the amount of $102.94, retroactive to December 22, 1993, and for payment of all necessary medical expenses incurred in connection with the accident. We assess all costs to the defendants.
REVERSED AND RENDERED.
NOTES
[1] Stelly also alleged a dispute over the correct amount of the weekly compensation. However, that issue is not before us.